UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                            :
UNITED STATES OF AMERICA,                                   :
                                                            :        **DECISION AND ORDER**
                              Plaintiff,                    :
                                                            :        14-CR-556 (WFK)
              v.                                            :
                                                            :
GENNARO BRUNO,                                              :
                                                            :
                              Defendant.                    :
                                                            :
-----------------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On August 12, 2015, Defendant Gennaro Bruno moved to dismiss several counts of his
indictment, to inspect grand jury minutes, to compel discovery, and for a bill of particulars. The
Court referred these motions to Magistrate Judge Vera M. Scanlon on August 18, 2015. On
October 22, 2015, Magistrate Judge Scanlon held oral argument, during which Defendant
withdrew his motion to compel discovery. On December 15, 2015, Magistrate Judge Scanlon
issued a Report and Recommendation that recommended the Court deny Defendant's remaining
pretrial motions. On December 28, 2015, Defendant filed his objections to the Report and
Recommendation, and on December 29, 2015, the Government filed its objections. After a *de
novo* review of the record, the Court ADOPTS in part and REJECTS in part the
recommendations contained in the Report and Recommendation. Defendant's motions to
dismiss, to inspect the grand jury minutes, and for a bill of particulars are DENIED.

**BACKGROUND**

        The Court assumes familiarity with the underlying facts of this case, which are detailed in

Magistrate Judge Scanlon's excellent Report and Recommendation.

        On October 16, 2014, Gennaro Bruno ("Defendant") was indicted on fifteen counts in the

Eastern District of New York ("EDNY"). ECF No. 1 ("EDNY Indictment"). The EDNY

Indictment charged Defendant with racketeering; racketeering conspiracy; conspiracy to import

marijuana; conspiracy to distribute marijuana; using, carrying, and possessing a firearm in connection with violent and drug trafficking crimes; causing the death of Martin Bosshart through the use of a firearm; murder of Martin Bosshart in aid of racketeering; murder and conspiracy to murder Martin Bosshart while engaged in narcotics trafficking; conspiracy and attempt to prevent testimony; conspiracy and attempt to prevent communication of information to a law enforcement officer; and conspiracy and attempt to obstruct an official proceeding. *Id.* ¶¶ 16-60.

Defendant is allegedly a member of the "Corozzo Faction within the Gambino organized crime family of La Cosa Nostra." *Id.* ¶¶ 1, 15. The Gambino organized crime family operates through a specific hierarchy and structure, and at times includes internal factions centered around a specific person or purpose, such as the Corozzo Faction. *Id.* ¶ 6. The Gambino crime family occasionally recruits associates through "crews," or "loosely structured bands of young men" that "operate[] under the control, or with the acquiescence, of the Gambino crime family." *Id.* ¶ 8. These crews "d[o] not constitute lower levels of authority within the Gambino crime family hierarchy and structure, but rather function[], at times, self-sufficiently and without oversight; consist[] of members, many of whom were not members or associates of the Gambino crime family; and exist[] outside of the Gambino crime family hierarchy and structure." *Id.* One such crew was the "Young Guns," which was based in Queens, New York and at times operated under the control of Ronald Trucchio, a member of the Gambino crime family. *Id.* ¶ 9. The Young Guns, however, "operat[ed] outside of" and "was not a component of any faction of the Gambino crime family." *Id.* Defendant was a member of the Young Guns in the 1990s, then after serving

2

a prison term from 1997 to 2000, became an associate within the Corozzo Faction of the Gambino crime family. *Id.* ¶ 15.

In 2004, Defendant was charged in the Southern District of Florida ("SDFL") in a one-count indictment for racketeering conspiracy. Def.'s Omnibus Mot. ("Def.'s Mot."), Ex. B, ECF No. 53 ("SDFL Indictment"). The SDFL Indictment alleged that Defendant was a member of the "Young Guns," a crew "operating under the control of the Gambino Organized Crime Family." *Id.* ¶¶ 7-8. The SDFL racketeering conspiracy ran from approximately 1986 to 2004 with racketeering activities committed in the SDFL, New York City, and elsewhere. *Id.* ¶ 9. On December 16, 2004, Defendant pled guilty to the count of racketeering conspiracy in violation of 18 U.S.C. § 1962(d). Def.'s Mot., Ex. C ("SDFL Plea Agreement") ¶ 1.

On August 12, 2015, Defendant moved, in an omnibus motion, to dismiss several counts of the EDNY Indictment, to inspect the grand jury minutes, to compel discovery, and for a bill of particulars. Def.'s Mot. At oral argument before Magistrate Judge Scanlon on October 22, 2015, Defendant withdrew his motion for discovery. ECF No. 69 ("Omnibus Motion Oral Argument"). On December 15, 2015, Magistrate Judge Scanlon filed a Report and Recommendation recommending that the Court deny the remainder of Defendant's motions. ECF No. 73 ("R&R"). Defendant filed his Objections to the Report and Recommendations on December 28, 2015. ECF No. 75 ("Def.'s Objections"). The Government filed its Objections on December 29, 2015. ECF No. 76 ("Govt's Objections"). After a *de novo* review of the record, the Court ADOPTS in part and REJECTS in part the recommendations contained in the Report and Recommendation as follows.

**DISCUSSION**

In reviewing a Report and Recommendation, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The Court must conduct a *de novo* review of any contested portions of the Report and Recommendation when a party makes specific objections to the magistrate judge's findings. *United States v. Simpson*, 10-CR-836, 2012 WL 628497, at *1 (E.D.N.Y. Feb. 27, 2012) (Mauskopf, J.). When a party makes conclusory or general objections or reiterates the original arguments, the Court will review the Report and Recommendation for clear error. *Id.*

## I.    The Racketeering Charge Is Not Barred by Double Jeopardy

Defendant argues that Count One is barred by the Double Jeopardy Clause of the Fifth Amendment because it charges Defendant with racketeering conspiracy under 18 U.S.C. § 1962(d), to which Defendant pled guilty under the SDFL Indictment. Def.'s Mem. Supp. Omnibus Mot. 12-20, ECF No. 53 ("Def.'s Mem."). The Double Jeopardy Clause "protects against both multiple punishments and successive prosecutions for the same offense." *United States v. Basciano*, 599 F.3d 184, 196 (2d Cir. 2010) (citing *Schiro v. Farley*, 510 U.S. 222, 229 (1994)). Successive prosecutions violate the Double Jeopardy Clause when the subjects of the prosecutions are "'the same in fact and in law.'" *Id.* (quoting *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003)).

When making a claim for double jeopardy, a defendant must first "make a colorable showing that the crimes are the same." *Id.* at 197. The burden then shifts to the Government to show by a preponderance of the evidence that a person "'familiar with the totality of the facts

4

and circumstances would *not*, in fact, construe the initial indictment, at the time jeopardy attached, to cover the offense that was charged in the subsequent prosecution.'" *Id.* (quoting *United States v. Olmeda*, 461 F.3d 271, 283 (2d Cir. 2006)).

A double jeopardy claim for racketeering conspiracy exists when both conspiracies have the same "enterprise" and "pattern of racketeering activity." *United States v. Russotti*, 717 F.2d 27, 33 (2d Cir. 1983). The Second Circuit has established a five-factor test that courts should consider when determining whether the "pattern[s] of racketeering activity" in successive racketeering counts are the same. *Id.* The factors are:

> (1) the time of the various activities charged as parts of separate patterns; (2) the identity of the persons involved in the activities under each charge; (3) the statutory offenses charged as racketeering activities in each charge; (4) the nature and scope of the activity the government seeks to punish under each charge; and (5) the places where the corrupt activity took place under each charge.

*Id.* While the Second Circuit has placed particular emphasis on the fourth factor, courts must consider the five factors under a "totality of the circumstances." *Basciano*, 599 F.3d at 200, 211.

Magistrate Judge Scanlon found that the racketeering conspiracy charges did not violate double jeopardy because, even though the indictments covered the same enterprise, they covered different patterns of racketeering activity. The Court REJECTS the Report and Recommendation's finding that the enterprises are the same, and ADOPTS the Report and Recommendation's finding that the patterns are distinct. The Court holds that Count One does not violate double jeopardy and DENIES Defendant's motion to dismiss for double jeopardy.

## A. Government's Objections

The Government objects to Magistrate Judge Scanlon's finding that the enterprise in each indictment was the same because each was an "integrated part of the Gambino Crime Family." Govt's Objections at 19. The Government argues that Defendant was convicted in the SDFL case with being a member of the "Young Guns," which is a distinct enterprise from the "Corozzo Faction of the Gambino crime family" listed in the EDNY Indictment. *Id.* at 22. The Young Guns is a loose affiliation of young men that acted independently of New York's organized crime families. *Id.* at 23-24. The Gambino crime family, in contrast, is a highly organized criminal enterprise that occasionally recruits members from other groups, such as the Young Guns. *Id.* at 24.

The Government presents three arguments in support of its objection. First, the Government argues that the Young Guns was not "an integrated part" of the Gambino crime family because the EDNY Indictment alleges that the Young Guns crew operated outside of the Gambino crime family hierarchy and structure. *Id.* at 26-28 (citing EDNY Indictment ¶ 9). The Government explains that the SDFL Indictment does not allege that the Young Guns is part of the Gambino crime family. *Id.* at 27. Although the SDFL Indictment states that the Young Guns operated "under the control" of the Gambino crime family, the Government argues that this is distinct from stating that the Young Guns was "within" the Gambino crime family. *Id.* (citing SDFL Indictment ¶ 8). The Government provides the example of businesses forced to pay "protection money" to operate in an area dominated by an organized crime family. *Id.* at 27-28. Such businesses are under the control of, but are not a part of, the crime family. *Id.*

6

Second, the Government argues that even if the Young Guns was "an integrated part" of the Gambino crime family, it does not follow that the Young Guns was the "the same" enterprise as the Corozzo Faction. *Id.* at 28-30. The Government likens the two enterprises here to those in *United States v. Langella*, 804 F.2d 185, 189 (2d Cir. 1986). Govt's Objections at 28-30. In *Langella*, 804 F.2d at 189, the Second Circuit held that the two criminal organizations named in successive prosecutions—the Colombo Family of La Cosa Nostra and the Commission of La Cosa Nostra—were different "enterprises" under the racketeering statute even though they were organized within the same criminal organization, because the allegations of the two indictments demonstrated that the enterprises were self-sufficient and functioned without oversight.

Finally, the Government argues that the Report and Recommendation focused too much on the Gambino crime family's "control" of each enterprise. Govt's Objections at 30-33. The Government argues that the two enterprises are distinct when considering several other factors, including membership, structure, purpose, means, and methods, under the totality of the facts and circumstances. *Id.* (citing *United States v. Boyle*, 1:08-CR-523, 2010 WL 4457240, at *3 (S.D.N.Y. Oct. 27, 2010) (McMahon, J.), *aff'd*, 452 F. App'x 55 (2d Cir. 2011).

## B. Defendant's Objections

Defendant objects to Magistrate Judge Scanlon's finding that the "pattern of racketeering activity" in each indictment was distinct under the five-factor test in *Russotti*. Def.'s Objections at 7-10; *see supra* at 5. As to the first factor, Defendant suggests that the offense conduct covered in the SDFL Indictment did not end in 2004, but rather overlapped with the EDNY Indictment from 2000 to 2014. *Id.* at 7-8. Second, Defendant argues that there is no indication

that the people involved in the racketeering charge in the EDNY Indictment are different from those in the SDFL Indictment. *Id.* at 8-9. With respect to the third and fourth factors, Defendant argues that Magistrate Judge Scanlon improperly relied on the SDFL plea allocution rather than on the indictments. *Id.* at 3-6, 9. Fifth, Defendant argues that Magistrate Judge Scanlon incorrectly focused on additional offense conduct that took place in Florida under the SDFL Indictment. *Id.* at 9-10.

Defendant argues that Magistrate Judge Scanlon should not examine Defendant's plea allocution from the SDFL case in determining the pattern of racketeering activity in this case. *Id.* at 3. Defendant contests Magistrate Judge Scanlon's reliance on *Olmeda*, 461 F.3d at 282-83, for the proposition that the Court may review the SDFL plea allocution in considering the breadth of the double jeopardy claim. *Id.* at 3-6. Defendant further argues that the Court cannot limit its analysis to the predicate facts proffered by the Government at a plea allocution because to do so would improperly limit the breadth of the "pattern of racketeering activity" for double jeopardy purposes. *Id.* at 4-6.

### C. Analysis

The Court finds, based on its *de novo* review, that the SDFL and EDNY indictments allege distinct enterprises and distinct patterns of racketeering activity. The Court holds that the prosecution of Defendant for racketeering conspiracy, Count One in the EDNY Indictment, does not violate Defendant's double jeopardy rights.

## 1. Distinct Enterprises

The SDFL Indictment charged Defendant with being a member of the Young Guns crew based in Ozone Park, Queen. SDFL Indictment ¶ 7. The SDFL Indictment further alleged that the Young Guns traveled from New York to South Florida to commit crimes such as murder, commercial robberies, drug trafficking, credit card fraud, illegal sale, and transportation of weapons and assault. *Id.* ¶ 14(f). The SDFL Indictment neither describes the Young Guns as having a particular hierarchy, nor alleges that the Young Guns was part of the formal structure of the Gambino crime family. To be sure, the SDFL Indictment alleged that Defendant acted "under the authority" of Ronald Trucchio, a member of the Gambino crime family, but the Court finds that Defendant committed this offense conduct outside the structure and hierarchy of the Gambino crime family as a member of the Young Guns. *Id.* ¶¶ 12(a), 14(b).

The EDNY Indictment, in contrast, alleged that Defendant joined the "Corozzo Faction within the Gambino organized crime family of La Cosa Nostra" enterprise in 2000, after he had terminated his association with the Young Guns. EDNY Indictment ¶¶ 1, 15. The EDNY Indictment alleged that the Gambino crime family was a highly structured criminal enterprise that engaged in a broad range of criminal activity in and around New York City. *Id.* ¶¶ 2-7. Although associates in the Gambino crime family were sometimes recruited from groups such as the Young Guns, these groups did not constitute lower levels of authority within the Gambino crime family hierarchy and structure; they could function separately, self-sufficiently, and without oversight, and had many members who were not members or associates of the Gambino crime family. *Id.* ¶¶ 8-9.

The Court disagrees with the Report and Recommendation's conclusion that the Young Guns is "an integrated part" of the Gambino crime family. *See* R&R at 23. The allegations in the EDNY Indictment directly contradict this conclusion: "As a crew *operating outside* of the Gambino family hierarchy and structure, the 'Young Guns' was *not* a component of any faction of the Gambino crime family, including the Corozzo Faction, and is no longer in existence.'" EDNY Indictment ¶ 9 (emphases added). The SDFL Indictment, in contrast, does not allege that the Young Guns was a part of the Gambino crime family. Although the SDFL Indictment alleges that the Young Guns operated "under the *control of* the Gambino Organized Crime Family," SDFL Indictment ¶ 8 (emphasis added), this does not mean that the Young Guns was a *part of* the Gambino crime family. As the Government notes, it is possible for an entity to fall under the control of an organized crime family without being a part of the formal hierarchy within the family. *See* Govt's Objections at 27-28. Here, it is clear that the Young Guns were never "an integrated part" of the formal hierarchy and structure of the Gambino crime family.

The Court further disagrees with the Report and Recommendation's focus on the level of control the Gambino crime family exercised over the Young Guns and the Corozzo Faction. *See* R&R at 22-23. Several additional factors, including the structure, purpose, membership, means, and methods of the two groups, are relevant to the inquiry and further demonstrate that the two entities are separate enterprises. *See Boyle*, 2010 WL 4457240, at *2-3, *aff'd*, 452 F. App'x 55 (2d Cir. 2011). In *Boyle*, the Second Circuit affirmed the district court's holding that the "Boyle Crew" was a distinct enterprise from the "Gambino Crime Family" based on its analysis of these factors. *Boyle*, 452 F. App'x at 57-58. Their memberships were distinct because the Boyle crew

10

was "an informal association of individuals" containing many members associated with different organized crime families, whereas the Gambino crime family was a "notorious and highly structured organized crime enterprise with an existence dating to the 1960s." *Id.* at 57-58. Their purposes were also distinct because the Boyle crew "came together in the 1990s to rob banks," whereas the Gambino crime family had several purposes that "reached beyond money-making and were achieved by a wide range of crimes: murder, assault, obstruction of justice, witness tampering, extortion, and theft." *Id.; see also United States v. Urso*, 369 F. Supp. 2d 254, 262 (E.D.N.Y. 2005) (Garaufis, J.) (holding that there was no double jeopardy violation after finding the Bonnano crime family and the Ridgewood Boys, a crew affiliated with the Bonnano crime family, to be distinct enterprises).

Here, the Young Guns and the Corozzo Faction of the Gambino crime family are distinct enterprises for many of the reasons the *Boyle* court elucidated. The EDNY Indictment described the Young Guns as a "loosely structured band[] of young men" that "operat[ed] outside of the Gambino crime family hierarchy and structure," but described the Corozzo Faction as a faction "[w]ithin the Gambino crime family hierarchy and structure" made up of members in the Gambino crime family who maintained an alliance with Joseph Corozzo. EDNY Indictment ¶¶ 6, 8-9. Moreover, the purpose of the Young Guns was to generate money for its members through the commission of various criminal acts, while the purposes of the Corozzo Faction included settling personal grievances and preventing government detection of its members, associates, illegal activities, and location of proceeds from those activities. *Id.* ¶¶ 9, 11-13.

The Court also finds *Langella*, 804 F.2d at 188-89, persuasive, albeit for reasons other than those explained in the Report and Recommendation. *See* R&R at 23. In *Langella*, 804 F.2d at 188-90, the Second Circuit held that prosecuting defendants for racketeering offenses as members of the "Commission of La Cosa Nostra" did not violate the double jeopardy clause, despite their previous prosecution as members of the "Colombo Organized Crime Family of La Cosa Nostra." The Second Circuit held that the enterprises were distinct, even though both were "vertically organized segments" within La Cosa Nostra, because the indictments alleged that "[w]ithin its own sphere of operation," the Colombo Family was a "self-sufficient enterprise that function[ed] without oversight by the Commission." *Id.* at 189. This reasoning applies with even more force here, where the Young Guns was not even a part of the Gambino crime family, let alone a "vertically organized segment" of the Gambino crime family. The EDNY Indictment alleges the Young Guns "did not constitute lower levels of authority within the Gambino crime family," "functioned, at times, self-sufficiently and without oversight," and "existed outside of the Gambino crime family hierarchy and structure." EDNY Indictment ¶ 8.

For the foregoing reasons, the Court finds that the Young Guns and the Corozzo Faction of the Gambino crime family to be distinct enterprises. Accordingly, the Court REJECTS the Report and Recommendation's finding that the enterprises are the same.

### 2. Distinct Patterns of Racketeering Activity

Defendant objects to Magistrate Judge Scanlon's conclusion that the patterns of racketeering activity in the SDFL and EDNY Indictments were distinct based on its analysis of the five-factor test from *Russotti*. Def.'s Objections at 7-10. In addressing the first *Russotti*

factor, Defendant argues that there is significant overlap in time for the actions alleged in the two indictments because the SDFL Indictment covered offense conduct that occurred until 2014, ten years after the indictment. *Id.* at 7-8. The SDFL Indictment, however, was issued in 2004 and does not purport to cover future conduct. *See* SDFL Indictment ¶ 9 (alleging that the racketeering conspiracy occurred "[f]rom in or about 1986 and continuing thereafter through the date of the return of this indictment"). Even under the broadest reading of the time period alleged, the SDFL Indictment covers allegations of offense conduct between 1986 to 2004, resulting in an overlap with the EDNY Indictment of four years—2000 to 2004. *See id.* As the Government argued at Defendant's plea allocution, most of the alleged offense conduct in the SDFL Indictment occurred from 1993 to 1995. *See* Gov't Mem. Opp. Omnibus Mot. ("Gov't Mem."), Ex. A ("SDFL Guilty Plea Transcript") at 15-18, ECF No. 59. None of the six racketeering activities alleged in the EDNY Indictment occurred during this period. The Court concludes there is no significant overlap in time for the allegations described in the EDNY and SDFL Indictments.

Second, Defendant objects to the Report and Recommendation's finding that the people involved in each indictment are distinct, because the Court should not limit its inquiry to only those people charged or identified in the indictments. Def.'s Objections at 8-9. The Report and Recommendation, however, considered the indictments, Government's papers, and oral argument in determining the individuals involved in the patterns, and found little overlap in the people involved in both conspiracies. R&R at 24-25. The Court also examines the array of

individuals involved in the patterns of racketeering activity in both conspiracies and finds no significant overlap.

As to the third and fourth factors, Defendant argues that Magistrate Judge Scanlon improperly relied on the SDFL plea allocution rather than on the indictments alone. Def.'s Objections at 9; *see infra* at 15-16. Finally, Defendant objects to the Report and Recommendation's finding of limited overlap in the location of the charged offense conduct, because both indictments allege criminal activities that took place in New York. *Id.* at 9-10. The Court recognizes this limited overlap, but finds that the emphasis in the SDFL Indictment was on the travel between New York and South Florida for the purpose of furthering the racketeering crimes, whereas the focus of the EDNY Indictment was on offense conduct that occurred entirely within New York. Under the totality of the circumstances of these five factors, the Court holds that a reasonable person would find it more likely than not that the EDNY and SDFL Indictments allege distinct patterns of racketeering.

The Court disagrees with Defendant's argument that *Olmeda*, 461 F.3d at 282-83, 287, does not permit the Court to consider the plea allocution in determining the scope of the alleged crimes. *See* Def.'s Objections at 2-7. In *Olmeda*, the Second Circuit considered whether an indictment for unlawful possession of ammunition in the Southern District of New York ("SDNY") was barred by double jeopardy when the defendant was previously indicted for unlawful possession of ammunition in the Eastern District of North Carolina ("EDNC"). *Olmeda*, 461 F.3d at 283-90. In its double jeopardy analysis, the Second Circuit did not limit its review to the indictment, but also examined the plea record, the sentencing proceedings in the

14

record, and the prosecution's representation of its understanding at the time which was never placed on the record. *Id.*; *see also Basciano*, 599 F.3d at 215 (considering the "totality of the evidence" from defendant's first case, including evidence of the charged crimes, evidence of other crimes, arguments made by the attorneys, and the court's jury instructions, in its double jeopardy analysis). Therefore, it is appropriate for the Court here to review the SDFL plea allocution in determining the scope of the patterns of racketeering activity for double jeopardy purposes.

Defendant argues that the Court should look to the language of the SDFL Indictment to determine the breadth of the double jeopardy inquiry, rather than to the plea allocution. Def.'s Objections at 4-6. Defendant points, for example, to the "and elsewhere" language in the SDFL Indictment and compares it to the "and elsewhere" language in the EDNC Indictment in *Olmeda*. *See id.*; SDFL Indictment ¶ 1; *Olmeda*, 461 F.3d at 283-90. This argument, however, is not in line with *Olmeda* and *Basciano*, which permit the Court to examine the entire record to elucidate the scope and meaning of the indictment. The *Olmeda* court did not, as Defendant seems to suggest, review the words in the indictment in isolation and interpret them broadly. Rather, the court concluded that "elsewhere" in the EDNC Indictment referred specifically to New York because (i) the prosecutors stated that they knew at the time of the indictment that the defendant possessed ammunition in New York, and (ii) the record did not indicate that the prosecutors were aware of ammunition in other locations. *Id.* at 284-85. Here, the Court can look to the entire record, including the SDFL plea allocution, to determine the scope of the racketeering charge in the SDFL and EDNY Indictments.

15

The Court finds that the SDFL and EDNY Indictments alleged different patterns of racketeering activities, and ADOPTS the Report and Recommendation's finding that the patterns of racketeering activity are distinct in each indictment, over Defendant's objections.

In sum, because the indictments cover different enterprises and patterns of racketeering activities, the Court holds that the racketeering conspiracy claim does not violate double jeopardy and DENIES Defendant's motion to dismiss Count One.

## II.     The SDFL Plea Agreement Does Not Bar the EDNY Charges

Magistrate Judge Scanlon recommends that the Court deny Defendant's motion to dismiss Counts One through Nine of the EDNY Indictment. Defendant objects on the ground that Defendant's SDFL plea agreement bars subsequent prosecution in the EDNY.

The Second Circuit has "'long interpreted plea agreements under principles of contract law,'" but also recognizes that "'plea agreements are unique contracts in which special due process concerns for fairness and the adequacy of procedural safeguards'" arise. *United States v. Gotti*, 457 F. Supp. 2d 411, 424 (S.D.N.Y. 2006) (Scheindlin, J.) (quoting *In re Altro*, 180 F.3d 372, 375 (2d Cir. 1999)). "A plea agreement binds only the office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction." *United States v. Annabi*, 771 F.2d 670, 672 (2d Cir. 1985). "The mere use of the term 'government' in a plea agreement does not create an affirmative appearance that the agreement contemplated barring districts other than the particular district entering into the agreement." *United States v. Salameh*, 152 F.3d 88, 120 (2d Cir. 1998) (citations and internal quotation marks omitted).

16

In this case, the Court agrees with Magistrate Judge Scanlon that Counts One through Nine of the EDNY Indictment should not be dismissed. The SDFL plea agreement states only that it "resolves defendant's federal criminal liability in the Southern District of Florida." SDFL Plea Agreement ¶ 17. The Court agrees that the plea agreement's plain language limits Defendant's criminal liability to the SDFL case, *see* R&R at 32-33, and finds that it is not "unreasonable" for Defendant to plead guilty to a crime in a single district, *see* Def.'s Objections at 11. The Court disagrees with Defendant's argument that the phrase "United States" shows an intent to bind all United States Attorney's Offices ("USAO"). *See id.* at 11-12. Rather, the plea agreement covers only Defendant's liability in the SDFL.

The Court therefore ADOPTS Magistrate Judge Scanlon's recommendations regarding the SDFL plea agreement over Defendant's objections and DENIES Defendant's motion to dismiss Counts One through Nine of the EDNY Indictment.

### III. The Charges Related to Martin Bosshart Are Not Dismissed for Pre-Indictment Delay

Magistrate Judge Scanlon recommends that the Court deny Defendant's motion to dismiss Counts Six through Nine, which relate to the murder of Martin Bosshart. Defendant objects on the grounds that pre-indictment delay violated the Speedy Trial Clause of the Sixth Amendment.

Defendant's arguments regarding the Government's delay in prosecuting Martin Bosshart were presented to Magistrate Judge Scanlon in Defendant's motion papers. *Compare* Def.'s Objections at 13, *with* Def.'s Mem. at 29-31; Def.'s Reply Mem. Supp. Omnibus Mot. 19-23, ECF. No. 65 ("Def.'s Reply Mem."). "When a party simply reiterates the original arguments

17

made the magistrate judge, the court will review the report strictly for clear error" rather than conduct a *de novo* review. *Simpson*, 2012 WL 628497, at *1 (citations omitted). The Court nevertheless conducts a *de novo* review.

Courts rarely dismiss criminal prosecutions brought within the statute of limitations. *See United States v. Cornielle*, 171 F.3d 748, 752 (2d Cir. 1999). A mere "investigative delay" in prosecuting a defendant "does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *United States v. Lovasco*, 431 U.S. 783, 796 (1977). An indictment, however, may violate a defendant's due process when a defendant shows that pre-indictment delay has "cause[d] 'substantial prejudice' to the defendant's ability to present his defense and the delay was an intentional device to gain [a] tactical advantage over the accused.'" *Cornielle*, 171 F.3d at 752 (brackets in original) (quoting *United States v. Marion*, 404 U.S. 307, 324 (1971)). The defendant bears the "heavy burden" of showing that he or she "suffered actual prejudice because of the alleged pre-indictment delay *and* that such delay was a course intentionally pursued by the government for an improper purpose." *Id.* (emphasis in original).

Here, Defendant has not borne this heavy burden. Defendant has failed to show that he suffered substantial prejudice due to witness unavailability because Defendant has not demonstrated how these witnesses would help his defense. Further, Defendant has failed to show that the Government intentionally pursued the delay in prosecution for an improper purpose. Defendant has merely pointed to the length of time between the event and the

18

indictments, a showing that fails to demonstrate an intentional or improper purpose by the Government. *See* Def.'s Objections at 13.

The Court therefore ADOPTS the Report and Recommendation regarding the pre-indictment delay over Defendant's objections and DENIES Defendant's motion to dismiss Counts Six through Nine.

## IV.     The Court Will Not Conduct an *In Camera* Review of the Grand Jury Minutes

Magistrate Judge Scanlon recommends denying Defendant's motion for an *in camera* review of the grand jury minutes to determine if the jury was misled as to Counts Six through Nine. Defendant objects on the grounds that his request is based on sufficient evidence.

Courts "consistently have recognized that the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 218 (1979). Courts may authorize disclosure of grand jury minutes, however, "at the request of a defendant who shows that a ground may exist to dismiss the indictment." Fed. R. Crim. P. 6(e)(3)(E)(ii). The party seeking disclosure must show that the material it seeks "is needed to avoid a possible injustice, that the need for disclosure is greater than the need for continued secrecy, and that his or her request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222; *see also United States v. Weinstein*, 511 F.2d 622, 627 (2d Cir. 1975) (holding that a defendant must show a "particularized need" to unseal grand jury minutes). A court will not authorize disclosure of grand jury minutes when the defendant alleges "mere speculation as to what occurred in front of the grand jury." *United States v. Brown*, 98-CR-168, 1995 WL 387698, at *7 (S.D.N.Y. June 30, 1995) (Schwartz, J.).

19

Rather, a defendant must present "concrete allegations of Government misconduct" for a court to allow inspection of grand jury minutes. *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).

Magistrate Judge Scanlon recommended that the Court deny Defendant's request to review the grand jury minutes *in camera* because Defendant's assertions of misconduct were speculative and based on insufficient evidence. R&R at 39-44. Defendant argues that his request had a solid and specific evidentiary basis and points to his responses to the Government's motions *in limine* as support. Def.'s Objections at 14-15. Defendant further argues that every request for inspection includes some degree of speculation because of the secrecy of the grand jury minutes. *Id.*

The Court disagrees with Defendant. Defendant has not presented any concrete allegations of prosecutorial misconduct; rather, his allegations are speculative and are comprised of unsubstantiated "ifs," "unlesses," and "mights" that that do not rise to the level of warranting disclosure. Moreover, Defendant's responses to the motions *in limine* do not suggest any inference of prosecutorial misconduct sufficient to provide support for opening up a sealed grand jury transcript. Defendant has not clearly articulated why disclosure of the grand jury transcripts is warranted in this case, and the Court is not aware of any reason for disclosure.

The Court therefore ADOPTS Magistrate Judge Scanlon's recommendation over Defendant's objections and DENIES Defendant's motion for an *in camera* examination of the grand jury transcript.

## V.     The Court Denies Defendant's Motion for a Bill of Particulars

Magistrate Judge Scanlon recommends that the Court deny Defendant's motion for a bill of particulars. Defendant raises a conditional objection. Defendant will withdraw his motion for a bill of particulars if the Court grants his motion to dismiss for double jeopardy. If the Court denies his double jeopardy motion, however, Defendant objects to the denial of his motion for a bill of particulars.

A bill of particulars "inform[s] a defendant of charges with sufficient precision to allow preparation of a defense, to avoid unfair surprise, and to preclude double jeopardy." *United States v. GAF Corp.*, 928 F.2d 1253, 1260 (2d Cir. 1991). In the Second Circuit, a bill of particulars "is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." *United States v. Chen*, 378 F.3d 151, 163 (2d Cir. 2004) (quoting *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999)). Rule 7(e) of the Federal Rule of Criminal Procedure permits a defendant to seek a bill of particulars "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987). A district court has discretion to grant or to deny a bill of particulars. *Id.*

Defendant disagrees with Magistrate Judge Scanlon's conclusion that a bill of particulars was not necessary because Defendant was able to raise a double jeopardy claim. Def.'s Objections at 13-14. Defendant argues that the relevant inquiry is not whether he can raise *any* double jeopardy claim, but rather if he can raise a *successful* double jeopardy claim. *Id.*

21

Defendant explains that he needs a bill of particulars because a colorable double jeopardy claim exists, and a bill of particulars would enable him to elucidate the facts needed to raise a successful double jeopardy claim. *Id.*

The Court disagrees with Defendant. Defendant has sufficient information about the charges he faces in order to prepare for a defense. He has access to the charges listed in the EDNY Indictment, the time period of these charges, the Government's opposition motion for Defendant's pretrial release, and the recorded conversations that the Government has provided and will continue to provide. *Cf. United States v. Velez*, 3:10-CR-147, 2010 WL 4929266 (D. Conn. 2010) (Arterton, J.) (denying defendant's motion for a bill of particulars when defendant had "sufficient notice" about his charges from the names of his co-conspirators, the time period of the conspiracy, and details from the Government regarding wiretaps, surveillance, and related documents). Further, Defendant faces no risk of unfair surprise, a paucity of time, or a lack of pertinent information about his allegations. *Cf. United States v. Davidoff*, 845 F.2d 1151, 1154-55 (2d Cir. 1988) (holding a bill of particulars necessary to prevent unfair surprise where the defendant did not know at trial what other companies were implicated in the allegations); *United States v. Ramirez*, 602 F. Supp. 783, 793 (S.D.N.Y. 1985) (Conner, J.) (granting a defendant's request for a bill of particulars when the defendant was unaware at the eve of trial of the date, time, and location of his alleged involvement in the conspiracy and the names of his co-conspirators). The Court finds that Defendant has access to sufficient information to raise a double jeopardy claim and to prepare for trial, which he did, albeit unsuccessfully.

22

Accordingly, the Court ADOPTS the Report and Recommendation over Defendant's objections and DENIES Defendant's motion for a bill of particulars.

* * *

For the foregoing reasons, Magistrate Judge Scanlon's Report and Recommendation is ADOPTED in part and REJECTED in part in accordance with this Memorandum and Order. Defendant's motions to dismiss, to inspect the grand jury minutes, and for a bill of particulars are DENIED.

**SO ORDERED.**

s/ WFK

HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: January 28, 2016
        Brooklyn, New York