UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X
:
UNITED STATES OF AMERICA, :
: **MEMORANDUM AND ORDER**
:
: 14-CR-556 (WFK)
:
v. :
:
GENNARO BRUNO, :
:
          Defendant. :
:
-------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 8, 2016, the Court accepted the guilty plea of Gennaro Bruno ("Defendant") to an Indictment pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). ECF Nos. 97 ("Guilty Plea"), 98 ("Plea Agreement"). The plea agreement specified a sentence of two-hundred fifty-two months (twenty-one years) of imprisonment, to run concurrently with any sentence imposed on a violation of supervised release filed in the Southern District of Florida, followed by a five-year term of supervised release. Plea Agreement ¶ 2. The Court now ACCEPTS the parties' Rule 11(c)(1)(C) plea agreement and provides a complete statement of reasons. For the reasons stated below, Defendant is hereby sentenced to two-hundred fifty-two months (twenty-one years) of imprisonment, to run concurrently with any sentence imposed on a violation of supervised release filed in the Southern District of Florida, followed by a five-year term of supervised release. The Court also orders Defendant to pay the $100.00 mandatory assessment fee.

## BACKGROUND

On October 16, 2014, a fifteen-count Indictment was filed against Defendant. ECF No. 1 ("Indictment"). The Indictment charged Defendant with racketeering; racketeering conspiracy; conspiracy to import marijuana; conspiracy to distribute marijuana; using, carrying, and possessing a firearm in connection with violent and drug trafficking crimes; causing the death of Martin Bosshart through the use of a firearm; murder of Martin Bosshart in aid of racketeering; murder and conspiracy to murder Martin Bosshart while engaged in narcotics trafficking; conspiracy and attempt to prevent testimony; conspiracy and attempt to prevent communication

1

of information to a law enforcement officer; and conspiracy and attempt to obstruct an official proceeding. *Id.* ¶¶ 16-60.

On January 28, 2016, the Court denied Defendant's motions to dismiss, to inspect the grand jury minutes, and for a bill of particulars. ECF No. 85. Defendant filed a notice of interlocutory appeal on February 3, 2016, challenging the Court's denial of Defendant's motion to dismiss Count One of the Indictment for racketeering conspiracy as barred by double jeopardy. ECF No. 89.

On April 8, 2016, Defendant pled guilty to Count Two of the Indictment for Racketeering in violation of 18 U.S.C. § 1962(c) ("Count Two"). Guilty Plea at 1; Plea Agreement ¶ 1. During the guilty plea hearing, Defendant admitted as his racketeering acts his participation in the murder of Martin Bosshart (as alleged in Racketeering Act Four) and his conspiring to prevent testimony in a grand jury proceeding (as alleged in Racketeering Act Six). Guilty Plea at 1; Plea Agreement ¶ 1. Defendant's guilty plea was conditioned upon the Court's acceptance of the parties' plea agreement under Federal Rule of Criminal Procedure 11(c)(l)(C). Plea Agreement ¶¶ 2-3; *see United States v. Pimentel*, 932 F.2d 1029, 1033-34 (2d Cir. 1991) (discussing prosecutorial considerations in "sentence bargaining").

The Court had jurisdiction to accept Defendant's guilty plea and the plea agreement during the pending interlocutory appeal. *See United States v. Kerr*, 752 F.3d 206, 211 n.1, 213 n.2, 224 (2d Cir. 2014) (affirming guilty plea taken during pendency of interlocutory appeal); *see also United States v. Rodgers*, 101 F.3d 247, 251 (2d Cir. 1996) (holding that divestiture of a district court's jurisdiction where notice of interlocutory appeal is filed is "not automatic," but must be "guided by concerns of efficiency"). Defendant's interlocutory appeal concerned his double jeopardy challenge to Count One of the Indictment, which was "collateral to, and separable from the principle issue at the accused's impending trial, i.e., whether or not the

accused is guilty of the offense charged," *Abney v. United States*, 431 U.S. 651, 659 (1977).
Moreover, Defendant pled guilty to Count Two of the Indictment, which was not at issue in the interlocutory appeal. *See* Guilty Plea at 1; Plea Agreement ¶ 1.

At the conclusion of the guilty plea hearing, the Court accepted Defendant's plea of guilty and the plea agreement. The parties' plea agreement specified a sentence of incarceration of two-hundred fifty two months (twenty-one years), to run concurrently with any sentence imposed on a violation of supervised release filed in the Southern District of Florida, followed by a five-year term of supervised release. Plea Agreement ¶ 2. The plea agreement further states that Defendant agrees that he will not receive any credit against the sentence of two-hundred fifty-two months of imprisonment for terms of incarceration he served in relation to prior convictions. *Id.*

Defendant agreed to withdraw with prejudice his interlocutory appeal upon the Court's acceptance of his guilty plea. Plea Agreement ¶ 3. On April 20, 2016, the United States Court of Appeals for the Second Circuit filed a mandate stating that the parties filed a stipulation withdrawing the interlocutory appeal pursuant to Federal Rule of Appellate Procedure 42. ECF No. 99.

## DISCUSSION

### I. Legal Standard

The parties have agreed that the specified imprisonment and supervised release terms are not based on the Guidelines. Plea Agreement ¶ 2. The Court must, nevertheless, consider the Guidelines in deciding whether to accept the plea agreement. *See* United States Sentencing Guidelines § 6B1.2 (U.S. Sentencing Comm'n 2015) ("U.S.S.G.").

Under Guidelines § 6B1.2, the Court may accept an agreed-upon sentence under

3

Federal Rule of Criminal Procedure 11(c)(1)(C) if "the agreed sentence is within the applicable guideline range." *Id.* § 6B1.2(c)(1). The Court may also accept the sentence if the agreed-upon sentence falls below the applicable guideline range and the Court provides "justifiable reasons" for the departure from the sentencing range and "set[s] forth [those reasons] with specificity in the statement of reasons form." *Id.* § 6B1.3(c)(2).

Once the Court accepts the plea agreement, the Court is bound to the specific sentence agreed upon by the parties in the plea agreement. Fed. R. Crim. P. 11(c)(l)(C) ("[A] recommendation or request binds the court once the court accepts the plea agreement[.]"). Rejection of the plea agreement or deviation from the agreed-upon sentence, however, permits Defendant to withdraw his guilty plea. *See* Fed. R. Crim. P. 11(c)(5); U.S.S.G. § 6B1.3.

## II. Analysis

Here, the Court finds that the agreed-upon sentence (two-hundred fifty two months, to run concurrently with any sentence imposed on a violation of supervised release filed in the Southern District of Florida, followed by a five-year term of supervised release) falls outside the Guidelines sentencing range (three-hundred-sixty months to life imprisonment). Therefore, the Court now provides a "justifiable reasons" and a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under [Section] 3553(a)." *United States v. Davis,* 08-CR-332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.) (internal quotation marks and citation omitted).

### 1. The Kinds of Sentences Available

Section 3553(a)(3) of Title 18 of the United States Code requires the Court to discuss "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3). In this case, Defendant pled guilty to Racketeering under Count Two of the Indictment in violation of 18 U.S.C. § 1962(c). Guilty Plea at 1; Plea Agreement ¶ 1.

4

Count Two carries a minimum imprisonment term of zero years and a maximum imprisonment term of life. 18 U.S.C. § 1963(a). The Court may impose a term of supervised release of no more than five years to follow any term of imprisonment, and if a condition of release is violated, the Court may sentence Defendant to up to five years without credit for pre-release imprisonment or time previously served on post-release supervision. *Id.* §§ 3583(b), 3583(e). Defendant is ineligible for probation because the offense is a Class A felony. *Id.* § 3561(a)(1). The Court may impose a maximum fine of $250,000.00 or twice the gross gain or gross loss of the enterprise, whichever is greater. *Id.* §§ 1963(a)(3), 3571. Restitution shall be ordered in this case, pursuant to 18 U.S.C. § 3663A, and the Court may set a date, not to exceed ninety days after sentencing, for the final determination of the victim's losses, pursuant to 18 U.S.C. § 3664(5). Defendant is required to pay the special assessment of $100.00. 18 U.S.C. § 3013. Accordingly, the sentence that the Court imposes falls within the kinds of sentences available to Defendant.

2. **The Kinds of Sentence and the Sentencing Range Established For Defendant's Offenses**

Section 3553(a)(4)(A) requires the Court to detail "the kinds of sentence and the sentencing range established for[] the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A). Defendant pled guilty to Count Two of the Indictment, which is composed of six Racketeering Acts. Guilty Plea at 1; Plea Agreement ¶ 1.

Count Two for Drug Trafficking (Racketeering Acts One, Two, and Three) and the Murder of Martin Bosshart (Racketeering Act Four) carries a base offense level of forty-three under Guidelines § 2D1.1 and by reference to Guidelines § 2A1.1. *See* U.S.S.G. §§ 2D1.1, 2A1.1. Guidelines § 2D1.1 governs offenses under 21 U.S.C. §§ 846, 841(a)(1), 963, 952, and

5

960(a)(1). Guidelines § 2A1.1 applies because the offense of murder is incorporated into Racketeering Act Four, and although Racketeering Act Four charges violations of New York Penal Law §§ 125.25(1) and 20.00, *see* Indictment ¶¶ 28-30, the most analogous federal offense is 18 U.S.C. § 1111 for murder, to which Guidelines § 2A1.1 applies. A two-level increase is required under Guidelines § 3C1.1 because Defendant obstructed the grand jury investigation of the murder of Martin Bosshart by witness tampering, as charged in Racketeering Act Six. *See* U.S.S.G. § 3C1.1; Indictment ¶¶ 36-42. Accordingly, the adjusted offense level for Count Two for Racketeering Acts One, Two, Three, and Four is forty-five.

Count Two for Extortionate Extension of Credit (Racketeering Act Five) carries a base offense level of twenty under Guidelines § 2E2.1(a), which governs offenses under 18 U.S.C. §§ 894 and 892. *See* U.S.S.G. § 2E2.1(a). In addition, Count Two for Witness Tampering (Racketeering Act Six) carries a base offense level of fourteen under Guidelines § 2J1.2, which governs offenses under 18 U.S.C. § 1512(k). *See* U.S.S.G. § 2J1.2.

The Guidelines permits a multiple-count adjustment. Count Two for Racketeering Acts One, Two, Three, and Four are grouped together under Guidelines §§ 3D1.2(b) and 3D1.2(d), and these Racketeering Acts are grouped together with Count Two for Racketeering Act Six under Guidelines § 3D1.2(c). Count Two for Racketeering Act Five, however, cannot be grouped with any of the other counts. Based on the calculations detailed above, the adjusted offense level for Racketeering Acts One, Two, Three, Four, and Six is forty-five, and the adjusted offense level for Racketeering Act Five is twenty. The greater of the two offense levels is forty-five and there is no increase in the offense level as per Guidelines § 3D1.4. Therefore, the combined adjusted offense level is forty-five.

The Guidelines permit a three-level reduction because Defendant has demonstrated responsibility for the offense and because the Government intends to make a motion stating that

6

it was notified in a timely manner of Defendant's intention to enter a plea of guilty. *See* U.S.S.G. § 3E1.1.

Taking these adjustments into account, Defendant's offense level is forty-two. *See* PSR ¶ 71. With a Criminal History Category of VI, *see* PSR ¶ 86, Defendant's Guidelines sentencing range is three-hundred sixty months of imprisonment to life imprisonment. *See* U.S. Sentencing Guidelines Manual Sentencing Table (U.S. Sentencing Comm'n 2015). Defendant is eligible for a supervised release term of two to five years. *See* U.S.S.G. § 5D1.2(a)(1). Defendant is ineligible for probation because the offense is a Class A felony, *see id.* § 5B1.1(b)(1), and because the applicable guideline range is in Zone D of the sentencing table, *see id.* § 5B1.1, comment (n.2). The fine range for this offense is from $25,000.00 to $250,000.00, *see id.* §§ 5E1.2(c)(3) and 5E1.2(h)(1), but Pretrial Services reported that Defendant appears unable to pay a fine, PSR ¶ 111.

The agreed-upon sentence of two-hundred fifty-two months (twenty-one years) of incarceration falls outside of the sentencing guidelines. The agreed-upon sentence of two-hundred fifty-two months (twenty-one years) of incarceration is nevertheless appropriate based upon the review by this Court of the justifiable reasons stated above and upon the review by this Court of the factors set forth in Section 3553(a).

### 3. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

18 U.S.C. § 3553(a)(1) requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the [D]efendant." 18 U.S.C. § 3553(a)(1).

#### a. History and Characteristics of Defendant

Defendant was born on November 6, 1972, in Queens, New York to the marriage of Gennaro Salvatore and Barbara (nee Slevin) Bruno. PSR ¶ 91. Defendant is married to Jeanene

7

(nee Stemm) Bruno. *Id.* ¶ 94. Defendant has no children from this marriage, but has three stepchildren from Jeanene Bruno's previous marriage. *Id.* Defendant's wife and stepchildren are aware of Defendant's conviction and are supportive. *Id.*

Defendant attended school until age sixteen, and earned his General Education Development (GED) diploma on May 9, 1990. *Id.* ¶ 101. Defendant has a history of marijuana, cocaine, and MDMA use, but has never received substance abuse treatment or counseling. *Id.* ¶ 100.

Defendant has a long history of repeated instances of criminal conduct. On January 16, 1989, at age sixteen, Defendant was arrested and later convicted of Attempted Grand Larceny in Queens County Supreme Court in Queens, New York. *Id.* ¶ 74. On January 16, 1989, an officer observed Defendant sitting in a vehicle that had a broken passenger-side window and a "popped" steering column. *Id.* Defendant told the officer that he thought the vehicle was abandoned and that he decided to start the vehicle so that he could drive it. *Id.* Defendant was adjudicated as a youthful offender, and, on June 18, 1989, was sentenced to conditional discharge. *Id.*

On May 22, 1992, Defendant was arrested and later convicted of Attempted Reckless Endangerment in the Second Degree in Queens County Criminal Court in Queens, New York. *Id.* ¶ 75. According to the arrest report, Defendant drove a motorcycle without a helmet, refused to stop, ran a red light, almost caused an accident, and resisted arrest. *Id.* On November 5, 1992, Defendant was sentenced to conditional discharge and a $500.00 fine (suspended). *Id.*

On December 10, 1992, Defendant was arrested and later convicted of Unauthorized Use of a Vehicle: Without Owner Consent in Queens County Criminal Court in Queens, New York. *Id.* ¶ 76. The records report that Defendant was observed driving a vehicle that the complainant did not authorize, and that Defendant resisted arrest. *Id.* Defendant was

8

sentenced to three days of probation and twenty-five days of community service. *Id.* Defendant was resentenced to one year of probation and seventy-five days of community service on January 16, 1994. *Id.* On August 1, 1996, a bench warrant was issued for Defendant's arrest, which was returned and executed on August 2, 1996. *Id.* Defendant's probation was revoked on September 12, 1996, and Defendant was resentenced to time served. *Id.*

Defendant was arrested again on June 10, 1993, and was convicted of Grand Larceny in the Third Degree in Nassau County Court in Mineola, New York. *Id.* ¶ 77. Defendant stole a vehicle from a parking lot on March 1, 1993, and the vehicle was later used as a get-away car during a bank robbery. *Id.* Although Defendant could not be tied to the bank robbery, his fingerprints were recovered from the vehicle, which was abandoned shortly after the bank robbery. *Id.* On December 10, 1992, Defendant was sentenced to five years of probation and six months of custody (sentence stayed). *Id.* Defendant violated the terms of his probation by incurring new criminal charges, and was sentenced for this violation on January 22, 1997, to two to six years of custody. *Id.* Defendant was paroled on April 28, 2000, and was discharged on April 29, 2002. *Id.*

On February 17, 1995, Defendant was arrested, arraigned in Queens County Supreme Court in Queens, New York, and charged with Enterprise Corruption. *Id.* ¶ 8. On September 9, 1996, this case was consolidated with another case in which Defendant was convicted of Grand Larceny in the Second Degree for Property Obtained by Extortion, discussed below. *Id.*; *see also infra* at 12.

Defendant was arrested on May 9, 1995, and was convicted of Assault with Intent to Cause Serious Injury with Weapon in Queens County Supreme Court in Queens, New York. PSR ¶ 78. On March 19, 1995, officers responding to reports of a stabbing at a hospital in

9

Elmhurst, New York, and spoke with two male victims and several witnesses who stated that Defendant punched and assaulted the victims. *Id.* The victims were later examined, which showed that both victims were stabbed. *Id.* One victim required numerous staples and sutures to close the wound that caused intestine and colon damage. *Id.* The second victim suffered a stab wound to his left lumbar region, penetrating his left upper kidney. *Id.* Defendant was identified through a photo lineup, and was arrested on May 9, 1996, after appearing in court on an unrelated matter. *Id.*

On April 19, 1996, Defendant was arrested and was later convicted of Criminal Possession of a Weapon in the Fourth Degree in Queens County Criminal Court in Queens, New York. *Id.* ¶ 79. According to the arrest report, Defendant was operating a vehicle with a suspended license, presented fraudulent identification, and was found in possession of a bag of marijuana and a gravity knife. *Id.* Defendant was sentenced on September 12, 1996 to time served, which amounted to two days. *Id.*

Defendant was arrested again on July 28, 1996. *Id.* ¶ 80. According to a presentence report prepared by the New York City Department of Probation, law enforcement conducted an investigation into a "chop-shop" operation run by members of the Bonanno Organized Crime Family. *Id.* It became evident during the investigation that members were stealing cars and delivering them to the chop-shops where they were dismantled. *Id.* Defendant was identified as one of the people who would then transport these parts to auto-parts stores or salvage yards. *Id.* On February 25, 1994, two members of the operation, who had stolen from another chop-shop, were kidnapped at gunpoint, handcuffed, and beaten. *Id.* One of the members was shot in the leg. *Id.* In addition, one of the victims was handcuffed to a gas pipe and the other victim was driven to his home to retrieve $20,000.00 to pay for the stolen goods. *Id.* Defendant was identified as one of the assailants. *Id.* Defendant was convicted of

Attempted Burglary in the First Degree in Queens County Supreme Court in Queens, New York, and was sentenced to three to six years of custody on December 19, 1996. *Id.* Defendant was paroled on April 28, 2000, and discharged on April 29, 2002. *Id.*

On September 4, 2001, Defendant was arrested and charged with conspiring with Manuel Sanchez, Martin, Bosshart, Jeane Sarlo, and Dennis McSweeny to secure the release of Cesar Agramonte, who was involved in a conspiracy to distribute more than thirty kilograms of heroin. *Id.* ¶ 81. Defendants secured false testimony on behalf of Agramonte by paying substantial fees for the testimony. *Id.* Defendant was convicted of Conspiracy to Defraud the United States in the Southern District of New York in New York, New York. *Id.* On October 28, 2003, Defendant was sentenced to sixty months of custody and three years of supervised release. *Id.*

On March 12, 2003, Defendant was arrested and was later convicted of Grand Larceny in the Second Degree for Property Obtained by Extortion in Queens County Supreme Court in Queens, New York. *Id.* ¶ 82. According to Defendant's National Crime Information Center report and a supplemental report for the Bureau of Prisons presented by the Southern District of Florida, Defendant was arrested by the New York Police Department ("NYPD") on March 12, 2003. *Id.* Defendant and two other individuals extorted $38,000 from a competitive garbage collective service. *Id.* This conduct is included in Racketeering Act Five of Counts One and Two of the instant Indictment. *Id.* On January 5, 2004, Defendant was sentenced to forty-two months to seven years of custody. *Id.*

Defendant was arrested on January 23, 2004 and was convicted of Conspiracy to Violate RICO in the Southern District of Florida in Ft. Lauderdale, Florida. *Id.* ¶ 83. According to information provided by the Government, Defendant participated in at least five armed bank robberies in the New York area with two other members of an enterprise. *Id.*

11

During each bank robbery, Defendant and one enterprise member waited outside the bank in a stolen vehicle, as the third enterprise member entered the bank, displayed a firearm, and demanded cash from bank employees. *Id.* The three enterprise members then fled the bank together in the stolen vehicle. *Id.* In addition, on February 25, 1994, Defendant and two other enterprise members kidnapped a victim and transported him to a location where he was physically restrained. *Id.* The enterprise members believed that the victim, who was involved in chop-shop activities including dismantling stolen vehicles, had stolen vehicle parts from them. *Id.* The victim was physically beaten, shot in the leg, and forced to pay approximately $50,000.00 in jewelry to the enterprise members. *Id.* On December 16, 2006, Defendant was sentenced to one-hundred thirty days of custody, to be followed by three years of supervised release. *Id.* Defendant was released from custody on supervised release on September 19, 2012. *Id.* According to the U.S. Probation Officer who supervised Defendant, Defendant was generally compliant with the terms of his supervised release. *Id.*

Defendant has a lengthy disciplinary history from his time in imprisonment. *Id.* On December 31, 2003, Defendant was sanctioned to thirty days loss of commissary and visiting privileges and thirty days loss of telephone privileges for his refusal to obey orders and for being insolent to staff members. *Id.* On February 17, 2003, Defendant was sanctioned to thirty days loss of visiting privileges for his failure to stand count. *Id.* On February 19, 2008, Defendant was sanctioned to seven days disciplinary good conduct time and two months loss of commissary privileges for giving or accepting money without authorization on two separate occasion. *Id.* On April 27, 2009, Defendant was sanctioned twenty-seven days loss of good conduct time, thirty days loss of commissary privileges, and thirty days of disciplinary segregation for assaulting without serious injury. *Id.*

According to a report by the Federal Bureau of Prisons (BOP), Defendant has

completed several classes during his time in imprisonment in the areas of fitness, financial responsibility, parenting, disease prevention, AIDS awareness, stress management, anger management, internet and computing, and pre-release skills. *Id.*

### b. Nature and Circumstances of the Offense

On April 8, 2016, Defendant pled guilty to Count Two of a fifteen-count Indictment. Guilty Plea at 1; Plea Agreement ¶ 1. Count Two charges that between 2000 and October 2014, Defendant, together with others, was employed by and associated with the Corozzo Faction of the Gambino Crime Family. Indictment ¶ 44. This enterprise engaged in and conducted activities that affected interstate and foreign commerce. *Id.* Defendant knowingly and intentionally conducted and participated in, directly and indirectly, the conduct of the affairs of the enterprise through a pattern of racketeering activity. *Id.*

The Gambino Crime Family operates through a specific hierarchy and structure, and at times includes internal factions centered around a specific person or purpose, such as the Corozzo Faction. *Id.* ¶ 6. The principal purpose of the Corozzo Faction is to generate money for its members and associates. PSR ¶ 23. Members and associates of the Corozzo Faction engaged in criminal conduct such as murder and assault, and acted to prevent government detection of their identities, their illegal activities, and the location of proceeds of those activities. *Id.* ¶¶ 23-24. By approximately 2000, Defendant was recruited as an associate in the Corozzo Faction, and remained an associate until the date of the Indictment in 2014. *Id.* ¶ 26. Defendant, as an associate within the Corozzo Faction, engaged in a pattern of racketeering activity that consisted of crimes he committed with other Gambino members and associates. *Id.*

The pattern of racketeering activity through which Defendant, together with others, conducted the affairs of the Corozzo Faction of the Gambino Crime Family enterprise consisted of the acts described in Racketeering Acts One through Six in the Indictment. Indictment ¶ 45.

13

Racketeering Act One charges that between 2000 and 2010, Defendant, together with others, conspired to import 1,000 kilograms or more of marijuana from a place outside thereof, in violation of 21 U.S.C. §§ 952(a), 963, 960(a)(1) and 950(b)(1)(G). Indictment ¶¶ 19-21. Racketeering Act Two charges that between 2000 and 2011, Defendant, together with others, conspired to distribute and possessed with intent to distribute 1,000 kilograms of marijuana in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(vii). Indictment ¶¶ 22-24. Racketeering Act Three charges that between 2000 and 2003, Defendant, together with others, conspired to distribute and possessed with intent to distribute valium in violation of 21 U.S.C. §§ 846, 841(b)(2). Indictment ¶¶ 25-27. Racketeering Act Four charges that on January 2, 2002, Defendant, together with others, caused the death of Martin Bosshart with the intent to cause his death, in violation of New York Penal Law §§ 125.25(1) and 20.00. Indictment ¶¶ 28-30. Racketeering Act Five charges that between 2001 and 2003, Defendant, together with others, obstructed, delayed, and affected commerce and the movement of articles and commodities in commerce—specifically, proceeds from a waste carting company in Queens, New York—by extortion. Indictment ¶¶ 31-35. Racketeering Act Six charges that between 2009 and October 2014, Defendant, together with others, conspired to attempt to persuade and engage in misleading conduct towards an individual with the intent to influence, delay, and prevent the individual's testimony in an official proceeding before the Grand Jury in violation of 18 U.S.C. §§ 1512(k) and 1512(b)(1). Indictment ¶¶ 36-42.

Defendant was arrested by Federal Bureau of Investigation ("FBI") agents on October 28, 2014 at the Las Vegas office of the U.S. Probation Department in the District of Nevada. PSR ¶ 32. Defendant was transferred to the Eastern District of New York on November 14, 2014. *Id.*

### 4. The Need for the Sentence Imposed

18 U.S.C. § 3553(a)(2) instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2). The Court addresses each subsection in turn.

#### a. Reflecting the Seriousness of the Offense, Promoting Respect for the Law, and Providing Just Punishment

The Court finds a significant sentence is necessary to accomplish the purposes of reflecting the seriousness of the offense, promoting respect for the law, and providing just punishment. *See* 18 U.S.C. § 3553(a)(2)(A). Defendant has a lengthy criminal history with several prior convictions, including assault, criminal possession of a weapon, attempted burglary, conspiracy to defraud the United States, and grand larceny. Defendant's extensive criminal history demonstrates a total disregard for the laws of the United States and the safety of its citizens. The severity of Defendant's racketeering actions demonstrates that a weighty prison term is necessary to provide just punishment in this case.

This Court, however, must balance the seriousness of Defendant's offense with any costs and burdens imposed upon the Government, Defense Counsel, and the Court. Defendant's decision to plead guilty releases considerable resources the Government and Defense Counsel would have expended on responding to the interlocutory appeal and on a lengthy racketeering trial. The guilty plea also removes the need to rely on victims and witnesses to violent crimes to testify at a trial, a difficult and arduous experience. In determining Defendant's sentence, the

Court has considered the impact that the guilty plea and agreed-upon sentence has on the interests of the parties.

### b. Affording Adequate Deterrence to Criminal Conduct

"Under section 3553(a)(2)(B), there are two major considerations: specific and general deterrence." *Davis*, 2010 WL 1221709 at *2. The Court finds the agreed-upon sentence of incarceration is necessary to afford adequate deterrence, both specific and general, to criminal conduct. *See* 18 U.S.C. § 3553(a)(2)(B). Regarding specific deterrence, Defendant is a career criminal who has flouted the law since the age of sixteen. Defendant's persistent criminality after multiple convictions indicates that he is in need of lengthy incapacitation to deter him from continuing this criminal activity. *See United States v. Park*, 758 F.3d 193, 201 (2d Cir. 2014) (noting particular need for incapacitation and specific deterrence given the defendant's continued criminal activity after prior convictions). Regarding general deterrence, the Court finds that the agreed-upon sentence will discourage convicted felons from engaging in criminal racketeering activities.

### c. Protecting the Public from Further Crimes of the Defendant

As discussed above, Defendant is a career criminal whose offenses include assault with intent to cause serious injury with a weapon, criminal possession of a weapon, attempted burglary, conspiracy to defraud the United States, grand larceny, attempted reckless endangerment, and unauthorized use of a vehicle. The only way to protect the public from Defendant's continued pursuit of criminal activity is to incarcerate him for a significant period of time. The agreed-upon sentence of twenty-one years of imprisonment accomplishes this goal.

### d. Providing Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner

Defendant does not require additional educational or vocational training, medical care, or other correctional treatment. Accordingly, this factor is not relevant.

### 5. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth Section 3553(a) factor requires the Court to evaluate "any pertinent policy statement [] issued by the Sentencing Commission[.]" 18 U.S.C. § 3553(a)(5). There are no pertinent policy statements with respect to Defendant's particular criminal conduct, and therefore this factor is not relevant.

### 6. The Need to Avoid Unwarranted Sentence Disparities

The sixth Section 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). Defendant pled guilty to Racketeering, in violation of 18 U.S.C. §§ 1962(c), 1963(a). *See* Guilty Plea at 1; Plea Agreement ¶ 1. Because the statutory maximum term of imprisonment for Racketeering is life imprisonment, *see* 18 U.S.C. §§ 1962(c), 1963(a), a sentence of up to life imprisonment is not beyond the pale for Defendant's crime, and avoids disparities with other federal sentences which recognize the severity of such a crime.

### 7. The Need to Provide Restitution

The final 18 U.S.C. § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). In determining whether to order restitution, the Court must consider "the amount of loss sustained by each victim as a result of the offense" and "the financial resources of the defendant, the financial needs and earning ability to the defendant and the defendant's dependents, and such other

17

factors as the court deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i). Guidelines § 5E1.1(a)(1) further provides the Court shall enter restitution for the full amount of an identifiable victim's or victims' loss, and Guidelines §5E1.1(e) states the Court may order Defendant to pay the full amount of restitution in a lump sum. U.S.S.G. §§ 5E1.1(a)(1), 5E1.1(e).

Under the Guidelines, the Court shall order restitution. *See* U.S.S.G. § 5E1.1. According to Pretrial Services, however, the family of Martin Bosshart has not provided any documentation regarding his murder and the victim's losses. *See* PSR ¶ 123. The Court may set a date for the final determination of the victim's losses, not to exceed ninety days after the date of Defendant's sentencing. *See* 18 U.S.C. § 3664(5).

## CONCLUSION

The Court hereby ACCEPTS the parties' Rule 11(c)(1)(C) plea agreement and sentences Defendant to two-hundred fifty-two months (twenty-one years) of imprisonment, to run concurrently with any sentence imposed on a violation of supervised release filed in the Southern District of Florida, followed by a five-year term of supervised release. The Court also orders Defendant to pay the $100.00 mandatory assessment fee. The Court finds that this sentence is sufficient but no greater than necessary to accomplish the purposes of 18 U.S.C. § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and imposes the special conditions of release recommended by the U.S. Probation Department.

**SO ORDERED.**

s/ WFK

_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: May 10, 2016
      Brooklyn, New York